**PEOPLE OF the STATE OF ILLINOIS, Plaintiff-Appellant**

v.

**OUTBOARD MARINE CORPORATION, INC., Defendant-Appellee.**

Nos. 79-1341, 79-1725.

United States Court of Appeals, Seventh Circuit.

April 19, 1982.

Dissenting Opinion June 7, 1982. Rehearing and Rehearing En Banc Denied Oct. 7, 1982.

**474**

John Van Vranken, Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellant.

Bruce A. Featherstone, Kirkland & Ellis, Jeffrey C. Fort, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for defendant-appellee.

Before SWYGERT and WISDOM, Senior Circuit Judges,* and BAUER, Circuit Judge.

WISDOM, Senior Circuit Judge.

This case is before us for the second time, having been remanded by the United States Supreme Court. *See Illinois v. Outboard Marine Corp.*, 619 F.2d 623 (7th Cir. 1980). The facts of the case and early history of the litigation appear in our prior opinion, and we do not repeat them here. 619 F.2d at 624–25. When the case was last before us we held, in No. 79–1341, that the federal common law of nuisance for water pollution, recognized in *Illinois v. Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (*Milwaukee I*), extended to Illinois's claim against an in-state industrial polluter of navigable waters, in this case Lake Michigan. 619 F.2d at 630. We also held, in No. 79–1725, that § 505(b)(1)(B) of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1365(b)(1)(B), gives Illinois a right to intervene in the Federal Government's

action under the FWPCA. 619 F.2d at 632. The defendant, Outboard Marine Corp. (OMC), petitioned for a writ of certiorari in the United States Supreme Court. The Court granted the writ, *Outboard Marine Corp. v. Illinois*, 451 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981) (mem.), vacating and remanding our judgment for further consideration in the light of *Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (*Milwaukee II*).

*Milwaukee II* held that the 1972 amendments to the FWPCA, Pub.L.No.92–500, 86 Stat. 816, pre-empted Illinois's federal common law claims against Milwaukee for pollution of Lake Michigan. 451 U.S. at 317, 101 S.Ct. at 1792, 68 L.Ed.2d at 126. Subsequently, the Supreme Court decided *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S. Ct. 2615, 69 L.Ed.2d 435 (1981), in which it rejected a claim by a private organization seeking damages under the federal common law for pollution of coastal waters.[1] The Court based its conclusion on the broad statement that *Milwaukee II* "held that the federal common law of nuisance in the area of water pollution is entirely pre-empted" by the 1972 amendments to the FWPCA. 451 U.S. at 22, 101 S.Ct. at 2627, 69 L.Ed.2d at 452.

On remand, Illinois, and the United States as amicus curiae, concede that *Milwaukee II* governs claims against OMC for pollution occurring since the enactment of the 1972 amendments. But they argue that Illinois retains its rights under federal common law to abate a nuisance resulting from the discharge of pollutants prior to 1972. OMC asks us to hold that the federal common law remedy for pre-1972 pollution of navigable waters is pre-empted under *Milwaukee II*. We agree with OMC.[2]

---

* The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The Court also rejected claims that a private cause of action for damages could be implied under the FWPCA or the Marine Protection, Research, and Sanctuaries Act of 1972, Pub.L. No.92–532, 86 Stat. 1052. Most of the Court's opinion was devoted to a discussion of these claims. *See* 451 U.S. at 11–21, 101 S.Ct. at

2621–2627, 69 L.Ed.2d at 445–51. The Court did not find it necessary to discuss the common law claim in detail, dismissing it flatly on the authority of *Milwaukee II*. *Id.* at 11–22, 101 S.Ct. at 2621–2627, 69 L.Ed.2d at 445–52.

2. Because we agree with OMC that enactment of the 1972 amendments deprived Illinois of any remedy it might otherwise have had under federal common law, we need not consider how *Milwaukee II* would affect our prior holding

OMC also invites us to reconsider our decision that Illinois has a right to intervene in the federal government's suit against OMC. Because we find that nothing in *Milwaukee II* affects this issue, we leave our previous judgment on the intervention question intact.

## I.

Our consideration of the case on remand necessarily begins with a discussion of *Milwaukee II*. Illinois sued Milwaukee and its city and county sewerage commissions, seeking relief from pollution created by sewage discharges that overflowed into Lake Michigan. Illinois was concerned with both the level of pollutants in the sewage and the fact that the discharges occasionally—particularly in wet weather—overflowed directly into the lake. The cause of action was asserted under the federal common law of nuisance recognized in *Milwaukee I*.[3]

In considering Illinois's claims, the Supreme Court first noted that "[f]ederal courts, unlike state courts, are not general common law courts", 451 U.S. at 312, 101 S.Ct. at 1790, 68 L.Ed.2d at 123 (*citing Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938)), and that formulation of federal rules of law is a function more appropriate to the political than the judicial process. *Id.* at 313 & n.6, 101 S.Ct. at 1790, 68 L.Ed.2d at 123–24 (quoting Hart, *The Relations Between State and Federal Law*, 54 Colum.L.Rev. 489, 497 (1954)). *See also* Hill, *The Law-Making Power of the Federal Courts: Constitutional Pre-emption*, 67 Colum.L.Rev. 1024, 1080 (1967). Federal common law, the Court reasoned, is thus appropriate only when a court is compelled to consider a federal question to which Congress has not provided an answer. The making of federal common law is an "unusual exercise", the need for which disappears when Congress ad-

dresses the question. 451 U.S. at 314, 101 S.Ct. at 1791, 68 L.Ed.2d at 124.

The Court relied heavily on *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963), and *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). In *Arizona v. California*, several western states engaged in a dispute concerning their respective rights to the water of the Colorado River. The Supreme Court held the judicial doctrine of equitable apportionment inapplicable to the case, because Congress had enacted a method for allocating the water. In *Higginbotham*, the Court refused to allow damages for "loss of society" under the general maritime law, because such damages were unavailable under the Death on the High Seas Act, 46 U.S.C. § 761 et seq. Drawing on the language and reasoning of these two cases, the Court in *Milwaukee II* concluded that Congress can displace otherwise valid federal common law by enacting legislation in the area. This pre-emption does not depend on whether Congress has "affirmatively proscribed the use of federal common law". 451 U.S. at 315, 101 S.Ct. at 1791, 68 L.Ed.2d at 125. Rather, the question is whether Congress has "addressed the problem". *Id.*

Turning to the claims before it, the Supreme Court found relief under federal common law unavailable, because Congress had "occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency". *Id.* at 316, 101 S.Ct. at 1792, 68 L.Ed.2d at 126. The Court studied the legislative history and found considerable evidence that the 1972 amendments were intended as a comprehensive—and by implication exclusive—solution to the problem of water pollution. *Id.* at 316–319, 101 S.Ct. at 1792–93, 68 L.Ed.2d at 127–28. More specifically, the Court also found that the FWPCA directly addressed the precise

concerning Illinois's right to sue an in-state polluter under federal common law.

**3.** The power of the federal courts to fashion common law rules in specialized areas has been the topic of extensive scholarly commentary. *See* Friendly, *In Praise of Erie—And of the New Federal Common Law*, 39 N.Y.U.L. Rev. 383 (1964). *See also* sources cited in *Illinois v. Outboard Marine Corp.*, 619 F.2d 623, 625 n.7 (7th Cir. 1980). For a survey of the literature concerning the federal common law of nuisance specifically, *see id.* at n.12.

problems for which Illinois sought relief. The effluent limitations established by the Environmental Protection Agency under the Act, *see* § 301, 33 U.S.C. § 1311, and incorporated into Milwaukee's sewage discharge permits, *see* § 402(b)(1), 33 U.S.C. § 1342(b)(1), set the federal standards for legal levels of pollutants in discharged sewage and, the Court found, made common law standards unnecessary. 451 U.S. at 318–319, 101 S.Ct. at 1793–94, 68 L.Ed. at 128. Sewage overflows into Lake Michigan presented no different problem, the Court said, since they are governed by the same permit scheme as the discharges themselves. *Id.*

Nothing in the Court's opinion in *Milwaukee II* implies that Congress could not *choose* to preserve federal common law, even while enacting a parallel legislative solution. The Court considered this possibility but was not persuaded that Congress intended to do this in the FWPCA. *Id.* at 324–332, 101 S.Ct. at 1796–1800, 68 L.Ed.2d at 132–36.[4] Since Congress had "addressed the problem" and had not chosen to preserve federal common law remedies, the Court concluded that Illinois had no such remedy available.

## II.

Against this background we must consider whether the 1972 amendments to the FWPCA displaced the federal common law remedy for nuisances resulting from discharges of pollutants into navigable waters before 1972. Illinois and the United States argue that the common law action survives *Milwaukee II*, because the 1972 amendments do not address this particular problem. OMC argues that several provisions of the 1972 amendments do address pre-1972 pollution. Specifically, OMC refers to the provision that authorizes the Administrator of the EPA, in cooperation with the Secretary of the Army, to arrange for removal of in-place toxic pollutants, and appropriates funds for this purpose, § 115, 33 U.S.C. § 1265.[5] In addition, OMC relies on the provision authorizing the EPA to enter into agreements with states and municipalities to demonstrate the feasibility and practicality of removing pollutants from the Great Lakes, § 108(a), 33 U.S.C. § 1258(a); the provision directing the EPA to develop practical methods for eliminating "the effects of pollutants from in-place or accumulated sources", § 105(a), 33 U.S.C. § 1255(a); and the provision authorizing federal funds for state cleanup projects under EPA guidelines, § 314, 33 U.S.C. § 1324. These provisions, according to OMC, represent Congress's solution to the problem of pre-1972 pollution and displace any federal common law solution.

4. Illinois argued that §§ 510 and 505(e) of the FWPCA evidence a congressional intent to preserve the federal common law governing water pollution. Section 510 of the FWPCA, 33 U.S.C. § 1370, provides that nothing in the Act shall preclude states from adopting and enforcing more stringent limitations than those adopted under the Act. Section 505(e), 33 U.S.C. § 1365(e), the citizen suit provision of the Act, provides that "[n]othing in this section shall restrict any right ... under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief ...". The Court found, however, that § 510 preserves to the states only the power to adopt and enforce their *own* standards, not the power to require federal courts to develop federal common law standards. 451 U.S. at 329, 101 S.Ct. at 1797–98, 68 L.Ed.2d at 133. The Court's interpretation of § 505(e) focused on the words "nothing in this section", which it found to limit the effect of the subsection to the citizen suit provision itself. Section

505(e), the Court said, does not address the pre-emptive effect of the Act as a whole. *Id.* at 329 & n.22, 101 S.Ct. at 1798 & n.22, 68 L.Ed.2d at 133–34 & n.22. The Court similarly rejected as unpersuasive arguments based on the legislative history of the amendments, which purportedly demonstrated an intent to preserve the federal common law. *Id.* at 329–332, 101 S.Ct. at 1798–1800, 68 L.Ed.2d at 134–36.

5. Section 115, 33 U.S.C. § 1265, provides:

The Administrator is directed to identify the location of in-place pollutants with emphasis on toxic pollutants in harbors and navigable waterways and is authorized, acting through the Secretary of the Army, to make contracts for the removal and appropriate disposal of such materials from critical port and harbor areas. There is authorized to be appropriated $15,000,000 to carry out the provisions of this section, which sum shall be available until expended.

The issue between the parties is thus how broadly to define the "question" that Congress must "address" to displace federal common law. Illinois and the United States invite us to consider that Congress has not addressed the narrow problem of requiring a polluter to abate the nuisance he created before 1972. OMC argues that Congress has "addressed the question", since it has addressed the broader problem of pre-1972 pollution, even if it has not done so by means of remedies against the polluters themselves.

Illinois's characterization of the issue is not an unreasonable one. The 1972 amendments do not provide any recourse against a polluter for pre-1972 pollution. The discharges at issue in *Milwaukee II*, by contrast, were governed by EPA standards enforceable against the polluter, by means of criminal penalties, § 309(c), 33 U.S.C. § 1319(c), civil suit by the Administrator, § 309(b), 33 U.S.C. § 1319(b), private suit, § 505, 33 U.S.C. § 1365, and civil suit by a state, *see Massachusetts v. United States Veterans Administration*, 541 F.2d 119, 121 n.1 (1st Cir. 1976) (construing § 502(5), 33 U.S.C. § 1362(5)). Moreover, the Court in *Milwaukee II* considered it "significant" that the 1972 amendments gave Illinois a forum in which to protect the interests at issue, "one of the major concerns underlying the recognition of federal common law" in *Milwaukee I*. 451 U.S. at 324, 101 S.Ct. at 1796, 68 L.Ed.2d at 132.[6] Illinois's concerns in the case before us have no similar forum under the statute. Finally, both *Arizona v. California* and *Mobil Oil Corp. v. Higginbotham*, upon which the Court in *Milwaukee II* relied most heavily, involved (as did *Milwaukee II* itself) the enactment by Congress (or, in the case of *Milwaukee*

*II*, the delegation to an administrative agency) of rules of decision to govern particular types of conflicts previously governed by judicial rules of decision. The 1972 amendments, however, include no explicit rule for deciding suits against polluters for pre-1972 pollution. It is thus not wholly without foundation to argue, as Illinois and the United States do, that the reasoning of *Milwaukee II* extends only to cases in which Congress *necessarily* displaces a judicially fashioned rule by enacting a statutory one—and that it thus does not extend to the present case.

■ Nevertheless, we are convinced that this conception of the issue is too narrow, as is the reading of *Milwaukee II* that supports it. The heart of the Court's decision was the comprehensiveness of the 1972 amendments as a solution to the entire problem of water pollution. *See* 451 U.S. at 316–319, 101 S.Ct. at 1792–93, 68 L.Ed.2d at 126–28. Although the Court considered in detail the manner in which the FWPCA addressed the specific problems for which Illinois sought common law relief, the decision did not depend on this. Any possible doubt concerning the breadth of *Milwaukee II*'s holding[7] was resolved in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In *Sea Clammers*, the Court rejected a common law claim for relief from pollution of coastal waters, saying only that the 1972 amendments "entirely pre-empted" the federal common law of nuisance for water pollution and that "there is no reason to suppose the pre-emptive effect of the FWPCA is any less when pollution of coastal waters is at issue". *Id.*

---

**6.** The Court emphasized that under § 402(b)(3), 33 U.S.C. § 1342(b)(3), any state that may be affected by issuance of a discharge permit by another state has a right to participate in a public hearing on the permit application. Section 402(b)(5), 33 U.S.C. § 1342(b)(5), guarantees affected states the right to submit written recommendations to the permit-granting agencies of other states. And under § 402(d)(2)(A), 33 U.S.C. § 1342(d)(2)(A), the EPA may veto any permit issued by a state if the waters of another state are affected.

**7.** In stating its conclusion that common law relief was unavailable, the Court confined its result with the words "at least so far as concerns the claims of respondents". 451 U.S. at 316, 101 S.Ct. at 1792, 68 L.Ed.2d at 126. An implication by negative pregnant such as this, however, cannot overcome the Court's broad reasoning or the unambiguous language of *Sea Clammers* discussed in the text.

at 22, 101 S.Ct. at 2627, 69 L.Ed.2d at 452. More important, the Court held that to the extent the pollution complained of involved ocean waters not covered by the FWPCA, the federal common law was displaced by the Marine Protection, Research, and Sanctuaries Act of 1972, Pub.L.No.92–532, 86 Stat. 1052 (MPRSA). In support of this conclusion the Court said only that "[t]he regulatory scheme of the MPRSA is no less comprehensive, with respect to ocean dumping, than are analogous provisions of the FWPCA". 451 U.S. at 22, 101 S.Ct. at 2627, 69 L.Ed.2d at 452. *Sea Clammers* thus makes it clear that the result in *Milwaukee II* rested on the comprehensiveness of the 1972 amendments in addressing the problem of water pollution, and not on the fact that the amendments addressed some aspect of the problem in a particular way. *Milwaukee II* and *Sea Clammers*, taken together, establish that the "question" Congress "addressed" in the 1972 amendments was the entire question of water pollution. The displacement of federal common law must, under the reasoning of *Milwaukee II*, be equally broad.

Even if the 1972 amendments had not displaced the entire federal common law of nuisance in this area, we would have to find that they pre-empted the claims now before us. There can be no doubt that Congress in enacting the 1972 amendments considered the residual effects of pre-1972 discharges. The enactment of § 115, 33 U.S.C. § 1265, *see* note 5 *supra*, is proof enough of this. Moreover, although § 115 was added in Conference and had no counterpart in either the House or the Senate bill, *see* S.Rep. No.1236, 92d Cong., 2d Sess. 109 (1972) (*hereinafter Conf.Rep.*), *reprinted in* 1 Committee on Public Works, A Legislative History of the Water Pollution Control Act Amendments of 1972, at 292 (1973) (*hereinafter Leg.Hist.*), U.S.Code Cong. & Admin. News 1972, p. 3668, the

debate on the Senate bill demonstrates that the legislators were both familiar and concerned with the "serious problem of in-place or accumulated sources of pollution" throughout their consideration of the general problem of water pollution. 2 *Leg.Hist.* at 1311 (statement of Sen. Muskie). The enactment of § 4(a), Pub.L.No.92–500 § 4(a), 86 Stat. 896–97, which preserves those prosecutions under the Refuse Act of 1899, 33 U.S.C. § 407, that were begun before October 18, 1972, provides further evidence that Congress considered the problem of pre-1972 discharges, and specifically the appropriate role in the statutory scheme for remedies against polluters. Since Congress has obviously considered the problem of pre-1972 discharges, and enacted *some* solution, we cannot hold, after *Milwaukee II*, that the federal common law of nuisance continues to afford a remedy for those discharges. Illinois and the United States urge us, as discussed above, to find that Congress has not "addressed the question" because it has not enacted a remedy against polluters. Adopting this distinction, however, would be no different from holding that the solution Congress chose is not adequate. This we cannot do. The lesson of *Milwaukee II* is that once Congress has addressed a national concern, our fundamental commitment to the separation of powers precludes the courts from scrutinizing the sufficiency of the congressional solution. 451 U.S. at 314, 101 S.Ct. at 1791, 68 L.Ed.2d at 125 (quoting *TVA v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). "The question is whether the field has been occupied, not whether it has been occupied in a particular manner." *Id.* at 324, 101 S.Ct. at 1796, 68 L.Ed.2d at 131.[8]

Having found that the 1972 amendments "address the question" of pre-1972 pollution, we must consider the argument that

---

**8.** The United States argues that *Milwaukee II* does not govern here, because the FWPCA's treatment of pre-1972 pollution is not as comprehensive as its treatment of the concerns that gave rise to Illinois's claims in that case. This is in essence the same argument as that addressed in the text: that Congress's solution to the problem of pre-1972 pollution is inade-

quate. Our answer must also be the same. We would render meaningless the Supreme Court's emphasis on the comprehensiveness of the 1972 amendments, if we took it as a mandate to dissect the FWPCA section by section, with a view to finding that parts of it are *not* "comprehensive".

Congress nevertheless intended to preserve the federal common law of nuisance for these discharges. The United States, in its *amicus* brief, finds support for this conclusion in the House debate on § 115:

> This provision, of course, does not affect or preclude actions now underway or planned, such as those planned in the Puget Sound area of Washington in the case of several paper mills, to require that polluters remove bottom sludge deposits, whether toxic or not, at their expense. . . .

1 *Leg.Hist.* at 154 (statement of Rep. Dingell). The quoted remarks, however, are not as helpful to Illinois and the United States as they might seem at first. There is no evidence that Representative Dingell had in mind actions under federal common law specifically. To the extent he may have been concerned with displacing state law remedies, the 1972 amendments apparently addressed his concern. *See* § 510(1)(B), 33 U.S.C. § 1370(1)(B).[9] In any case, the persuasive force of remarks on the floor is limited, particularly so in this case, since, as OMC points out, Congress did enact a limited savings clause, expressly preserving certain litigation arising from pre-1972 pollution. *See* Pub.L.No.92–500 § 4(a), 86 Stat. 896–97.

The United States also argues that Congress has adopted a general policy, applicable here, of requiring polluters to pay the cost of removing discharged pollutants, even when the federal government is authorized to undertake the cleanup itself. Section 311(f) of the FWPCA, 33 U.S.C. § 1321, as the United States points out, requires dischargers of oil or hazardous substances to repay the cost of removal by the federal government. *See United States v. Marathon Pipe Line Co.*, 589 F.2d 1305, 1307

(7th Cir. 1978). Similarly, the more recent Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq., establishes a "Superfund" for the cleanup of hazardous wastes, §§ 111, 121, 232, 42 U.S.C. §§ 9611, 9631, 9641, but makes those responsible for their discharge liable for cleanup costs, § 107, 42 U.S.C. § 9607. These provisions, however, cut both ways. Although they may reflect a general policy of holding polluters responsible for cleanup costs, they may equally demonstrate that when Congress chose to implement such a policy it did so explicitly. That one of the cited provisions was included in the 1972 amendments themselves makes the latter argument particularly compelling.[10]

Finally, the United States argues that the federal common law should afford a remedy in this case because this result would advance the FWPCA's objectives, "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters", § 101(a), 33 U.S.C. § 1251(a). This argument, however, proves too much; it also proves too little. It proves too much because the same reasoning would have supported the common law claims in *Milwaukee II* and would have led to a different result. It proves too little because the legislature's objectives in enacting the details of a statutory scheme are seldom as simple or uniform as the United States would have us believe. As is often the case, Congress in the 1972 amendments was concerned with balancing complex and conflicting interests. *See* 1 *Leg.Hist.* at 352–53 (House Debate, statement of Rep. Blatnik). There is evidence in the Senate debate on the 1972 amendments, for example, that Congress was concerned with economic and other problems associated with the disposal of dredged spoil. 1 *Leg.Hist.* at 167 (statement of Sen.

---

**9.** Inasmuch as state law may continue to afford relief in cases of this sort, that relief would apparently be available in this case, since OMC is located in Illinois and presumably subject to Illinois law. *See United States Steel Corp. v. Train*, 556 F.2d 822, 830 (7th Cir. 1977); *Scott v. City of Hammond*, 519 F.Supp. 292, 298 (N.D.Ill.1981). Illinois has appended several state law claims to the present action.

**10.** It may be most significant, in the present context, that § 311(f) of the FWPCA is the exclusive remedy for the federal government when it seeks to recover cleanup costs from a polluter covered by the provision. Recovery under the federal common law is unavailable. *United States v. Dixie Carriers*, 627 F.2d 736, 741 (5th Cir. 1980).

Muskie). Congress may thus have preferred to retain strict administrative control over cleanup projects. In any event, *Milwaukee II* makes irrelevant a court's conclusion that affording relief under the federal common law would advance the objectives of the FWPCA.

We conclude that the arguments of Illinois and the United States do not overcome the "presumption in favor of preemption of federal common law" that *Milwaukee II* requires whenever Congress has legislated on a subject. *United States v. Oswego Barge Corp.,* 664 F.2d 327, 335 (2d Cir. 1981). *See also Milwaukee II,* 451 U.S. at 316, 101 S.Ct. at 1792, 68 L.Ed.2d at 126. Because Congress has comprehensively addressed the question of pollution of navigable waters, and specifically pollution prior to 1972, Illinois's claims under the federal common law of nuisance cannot survive *Milwaukee II.*

### III.

■ OMC urges us to reconsider our earlier conclusion that § 505(b)(1)(B) of the FWPCA, 33 U.S.C. § 1365(b)(1)(B), gives Illinois a right to intervene in the United States's action against OMC under the FWPCA, *see* 619 F.2d at 632. Although, as OMC points out, the Supreme Court has remanded the *entire* case for further consideration in the light of *Milwaukee II,* we do not find that *Milwaukee II* sheds any new light on the intervention issue.

Section 505(b)(1)(B) authorizes intervention in any action by the Administrator "to require compliance" with a "standard, limitation, or order". 33 U.S.C. § 1365(b)(1)(B).[11] OMC argues, as it did when we first considered the case, that this language does not embrace "cleanup" actions, in which the government seeks to prevent or ameliorate the continuing effects of past discharges. Under this interpretation, intervention as of right would not be authorized in the present case. We rejected this argument in our previous opinion, 619 F.2d at 631, and we find no hint in *Milwaukee II* or *Sea Clammers* that our conclusion then was wrong. To the contrary, if *Milwaukee II* illuminates § 505(b)(1)(B) at all, it favors our earlier interpretation. The Supreme Court's emphasis on the comprehensiveness of the statutory scheme, to the exclusion of other remedies, suggests that courts should not unnecessarily narrow the FWPCA's remedial provisions.

OMC also argues that it has, since this case was last before us, received a new NPDES permit, with which it is now in compliance, and that the present action thus cannot be one "to require compliance".[12] That OMC has complied with its new permit, however, does not affect the nature of the government's complaint and does not materially change the situation before us from what it was when we initially allowed intervention. It matters no

---

**11.** Section 505(b)(1)(B), 33 U.S.C. § 1365(b)(1) (B), provides, in pertinent part:

> (b) No action may be commenced—
> (1) under subsection (a)(1) of this section—
> . . .
> (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

Illinois is clearly a "citizen" for purposes of this provision. *Massachusetts v. United States Veterans Administration,* 541 F.2d 119, 121 n.1 (1st Cir. 1976) (construing § 502(5), 33 U.S.C. § 1362(5)).

**12.** OMC has filed, with its initial brief on remand, a Motion for Leave to File Certified Agency Records. The certified records consist of a joint motion to stay Illinois administrative proceedings in a dispute between the Illinois Environmental Protection Agency (IEPA) and OMC, and an order of the Illinois Pollution Control Board granting the motion. The motion for a stay is accompanied by a letter of agreement between IEPA and OMC, outlining the terms of OMC's new NPDES permit.

We granted the motion to file the certified agency records. While we thus recognize that IEPA and OMC have reached agreement on a new permit, however, we do not find that this requires us to disturb our earlier decision that Illinois may intervene in the federal government's action. We express no opinion as to how this settlement may affect the ultimate decision of the case on the merits.

more now than then that present PCB discharges are not at issue. The United States continues to seek prospective relief from the effects of past discharges, in the form of injunctions and "such other and further relief as [the Court] deems just and proper".

## IV.

In summary, *Milwaukee II* establishes that the 1972 amendments to the FWPCA have displaced Illinois's claim under the federal common law of nuisance, and that action must be dismissed. Illinois may, however, intervene as of right in the federal government's action under the FWPCA.

The case is AFFIRMED in part, REVERSED in part, and REMANDED.

SWYGERT, Senior Circuit Judge, dissenting in part.

I respectfully dissent from the majority's holding that, applying the analysis of *Milwaukee II*, the 1972 amendments to the Federal Water Pollution Control Act preempt federal common-law remedies for pre-1972 pollution.

In *Illinois v. Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (*Milwaukee I*), the Supreme Court recognized the existence of the federal common law of nuisance as a remedy for interstate water pollution. On August 10, 1978, Illinois filed this action in the district court alleging that Outboard Marine Corporation had been discharging PCBs into Lake Michigan since 1959 in violation of the FWPCA and the common law of nuisance. The complaint sought an injunction against future discharging and a mandatory injunction requiring OMC to remove contaminated sediments.

When the case was first before this court, we held that Illinois did have a cause of action under the federal common law of nuisance. On remand, the majority has concluded that, in light of the Supreme Court's holding in *Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (*Milwaukee II*), the FWPCA has preempted common-law remedies even for discharges that occurred prior to the enactment of the 1972 amendments. My own analysis of *Milwaukee II* and the policies embodied in the FWPCA leads me to the opposite conclusion.

### I

I note at the outset that the Supreme Court in *Milwaukee II* did not consider the issue presented by the instant case: whether the 1972 amendments to the FWPCA pre-empted federal common-law remedies for discharges that occurred prior to 1972. The relief sought by Illinois in *Milwaukee II* was prospective only, *see Milwaukee II*, *supra*, 451 U.S. at 310, 101 S.Ct. at 1788; *Illinois v. Milwaukee*, 599 F.2d 151, 154 (7th Cir. 1979). The complaint in the case at bar alleges that the defendant has been discharging PCBs since at least 1959, and asks that OMC be ordered to remove the contaminated sediments.[1]

Although *Milwaukee II* did not deal with the issue of pre-1972 pollution, it does set out the analysis we must apply in determining whether the 1972 amendments to the FWPCA pre-empt the common law of nuisance as to conduct that allegedly occurred prior to 1972. In considering whether Congress had intended the 1972 amendments to pre-empt common-law remedies for water pollution occurring after 1972, the Supreme Court stated that "the question whether a previously available federal common-law action has been displaced by federal statutory law involves an assessment of the scope of the legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law." *Milwaukee II, supra*, 451 U.S. at 315 n.8, 101 S.Ct. at 1791 n.8. The Court found that, in passing the 1972 amendments, Congress had "occupied the field through the establishment of a comprehen-

1. The complaint also sought an injunction against future discharges, but Illinois concedes that its nuisance claims as to post-1972 discharges should be dismissed under *Milwaukee II*.

sive regulatory program supervised by an expert administrative agency." *Id.* at 317, 101 S.Ct. at 1792. Justice Rehnquist, writing for the majority, emphasized the comprehensive nature of the amendments, *id.* at 317–19, 101 S.Ct. at 1792–93, and concluded that this comprehensiveness "strongly suggests that there is no room for courts to attempt to improve on that program with federal common law." *Id.* at 315, 101 S.Ct. at 1791.

The statutory scheme of the 1972 amendments is plainly comprehensive as to post-1972 pollution, but cannot be so characterized as to pre-1972 activity. Although, as the majority notes, the amendments do contain some provisions dealing with in-place pollution,[2] *see* p. 476 *supra,* these provisions do not represent a "comprehensive regulatory program" for solving the problems of pollution that occurred prior to 1972.

The majority's response to this argument is that the critical test for pre-emption under *Milwaukee II* is whether Congress has "addressed the problem"—not whether the remedy that Congress provided is adequate. The majority finds that since Congress enacted *"some* solution" to the problem of pre-1972 pollution, then it has "addressed the question" and thereby pre-empted the common law.[3] *See* p. 478 & n.8 *supra.* This response, however, misses the point. Congress in enacting the 1972 amendments to the FWPCA did not expressly pre-empt federal common-law remedies for nuisance; the issue before us is whether Congress *intended* to pre-empt the common law. The Supreme Court in *Milwaukee II* inferred that Congress intended the pre-emption from the fact that the statutory scheme was comprehensive. That inference does not work as to problems not covered by a comprehensive regulatory program, in this case, pre-1972 pollution.

Given the few legislative provisions in the amendments dealing with pre-1972 pollution, it is reasonable to infer that Congress did not intend those provisions to be the exclusive remedy for in-place pollution. Section 115, which authorizes the EPA to identify and remove in-place pollutants from "critical port and harbor areas," 33 U.S.C. § 1265, can be viewed as allowing the federal government to take some action to alleviate the problem of existing pollution in "critical" areas while preserving common-law remedies for individuals harmed by pre-1972 pollution.

Further, as the majority noted, *see* p. 477 *supra,* the Supreme Court in *Milwaukee II* found it important that the statute provided a forum in which Illinois could make its claims, while in the case at bar Illinois has no remedy if its claim cannot be considered under the common law of nuisance. The absence of an alternative forum in which an injured party could pursue its claim was "one of the major concerns underlying the recognition of federal common law in [*Milwaukee I*]." *Milwaukee II, supra,* 451 U.S. at 325, 101 S.Ct. at 1796.

II

The conclusion that the 1972 amendments to the FWPCA do not pre-empt the federal common law of nuisance as to pollution which occurred prior to the passage of those amendments is further supported by the policies embodied in the statute. The 1972 amendments authorize citizen suits against parties allegedly in violation of the pollution standards set out in the statute, section 505(a), 33 U.S.C. § 1365(a), and provide for enforcement by the EPA through the imposition of civil and criminal penalties, section 309, 33 U.S.C. § 1319. Thus, Congress clearly intended that the parties causing

**2.** The majority relies primarily upon section 115, 33 U.S.C. § 1265, which is quoted in the majority opinion at p. 476, n.5 *supra.*

**3.** The majority stated that "[w]e would render meaningless the Supreme Court's emphasis on the comprehensiveness of the 1972 amendments if we took it as a mandate to dissect the

FWPCA section by section, with a view to finding that parts of it are not 'comprehensive.'" This conclusion is undercut by the opinion in *Milwaukee II,* in which the Supreme Court considered the statute's treatment of the specific claims involved in that case. *Milwaukee II, supra,* 451 U.S. at 319, 101 S.Ct. at 1793.

water pollution be held liable for damages. The express policy of Congress in enacting the 1972 amendments, "to restore and maintain the ... integrity of the Nation's waters," is severely undercut by the holding of the majority in this case. The decision of this court not only deprives Illinois of any forum in which to redress its grievances but also allows the alleged polluters to escape responsibility for their actions. This certainly could not have been envisioned by the members of Congress as a likely consequence of the enactment of the FWPCA.

### III

Finally, the opinion in *Milwaukee II* must be read against the background of a line of precedent holding that common-law rights and remedies are not abrogated by a new statute in the absence of a clear indication that Congress intended the statute to pre-empt the common law. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 298, 96 S.Ct. 1978, 1984, 48 L.Ed.2d 643 (1976) ("a common-law right, even absent a savings clause, is not to be abrogated 'unless it be found that the preexisting right is so repugnant to the statute that the survival of such right' would in effect deprive the subsequent statute of its efficacy' "); *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 412, 89 S.Ct. 1144, 1148, 22 L.Ed.2d 371 (1969) ("the legislative grant of a new right does not ordinarily cut off or preclude other nonstatutory rights in the absence of clear language to that effect"); *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437, 27 S.Ct. 350, 354, 51 L.Ed. 553 (1907). Although the comprehensiveness of the statutory scheme of the 1972 amendments evinces Congress's intent to pre-empt common-law remedies for pollution created after 1972, there is no similar indication of congressional intent as to pollution caused by activity occurring prior to 1972.

For the foregoing reasons, I would hold that plaintiff's complaint in the instant case states a cause of action under the federal common law of nuisance as recognized in *Milwaukee I.*