USCA1 Opinion

 

 November 20, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ ____________________ No. 91-2242 No. 91-2242 KIMBERLY MATTOON, ET AL., KIMBERLY MATTOON, ET AL., Plaintiffs, Appellants, Plaintiffs, Appellants, v. v. CITY OF PITTSFIELD, ET AL., CITY OF PITTSFIELD, ET AL., Defendants, Appellees. Defendants, Appellees. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, U.S. District Judge] [Hon. Frank H. Freedman, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Cyr, Circuit Judge, Cyr, Circuit Judge, _____________ Campbell, Senior Circuit Judge, Campbell, Senior Circuit Judge, ____________________ and Fuste,* District Judge. and Fuste,* District Judge. ______________ ____________________ ____________________ W. Stanley Cooke for appellants. W. Stanley Cooke for appellants. ________________ Richard J. O'Brien with whom David O. Burbank and Cain, Hibbard, Richard J. O'Brien with whom David O. Burbank and Cain, Hibbard, ___________________ ________________ ______________ Myers & Cook were on brief for appellee City of Pittsfield. Myers & Cook were on brief for appellee City of Pittsfield. ____________ John C. Sikorski with whom Robinson, Donovan, Madden & Barry, John C. Sikorski with whom Robinson, Donovan, Madden & Barry, _________________ ____________________________________ P.C. was on brief for appellees Krofta Engineering Corp., et al. P.C. was on brief for appellees Krofta Engineering Corp., et al. ____ William Shields with whom Carol F. Liebman and Day, Berry & William Shields with whom Carol F. Liebman and Day, Berry & ________________ _________________ _____________ Howard were on brief for appellee Metcalf & Eddy, Inc. Howard were on brief for appellee Metcalf & Eddy, Inc. ______ Jay S. Gregory with whom David J. Hatem and Posternak, Blankstein Jay S. Gregory with whom David J. Hatem and Posternak, Blankstein ______________ ______________ _____________________ & Lund were on brief for O'Brien & Gere, Inc. & Lund were on brief for O'Brien & Gere, Inc. ______ Elizabeth W. Morse with whom John A. Wickstrom and Tashjian, Elizabeth W. Morse with whom John A. Wickstrom and Tashjian, ___________________ __________________ _________ Simsarian & Wickstrom were on brief for appellee Fisher, et al. Simsarian & Wickstrom were on brief for appellee Fisher, et al. _____________________ ____________________ ____________________ ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. *Of the District of Puerto Rico, sitting by designation. CYR, Circuit Judge. Appellants, sixty-eight residents CYR, Circuit Judge. _____________ of Berkshire County, Massachusetts, who allegedly contracted giardiasis (otherwise known as "beaver fever") from drinking contaminated water supplied by the City of Pittsfield ("City") during November and December of 1985, brought suit against the City and various contractors and consultants for alleged viola- tions of federal and state law.1 Summary judgment was granted in favor of all six defendants on appellants' federal claims and the court dismissed the pendent state law claims without preju- dice. We affirm. I I BACKGROUND BACKGROUND __________ We describe only the essential procedural background to these complex proceedings. As in any summary judgment case, we recite the relevant facts in the light most favorable to the non- moving parties, in this case the appellants. See, e.g., Siegal ___ ____ ______ v. American Honda Motor Co., 921 F.2d 15, 17 (1st Cir. 1990). ________________________ In November 1985, the City reopened its Ashley Reser- voir to supply area residents with drinking water while other ____________________ 1The five other defendants are Kroftka Engineering Corp., Lenox Institute for Research, Inc., O'Brien & Gere, Inc., Metcalf & Eddy, Inc., and Fisher & Porter Co. Kroftka and Lenox advised and assisted in the design of the City's new water filtration and treatment facilities. O'Brien & Gere supervised construction of the new facilities. Metcalf & Eddy designed the City's Ashley Reservoir chlorine system and performed other services relating to the City's water distribution equipment. Fisher & Porter sold the chlorination equipment used at the Ashley Reservoir, and performed some maintenance. City water facilities were undergoing construction. The Ashley Reservoir had not been in use since 1983. Due to a major mal- function in its chlorination system, the Ashley Reservoir became contaminated with the giardia lamblia pathogen.2 Other area reservoirs were affected as well. By December 11, 1985, the City Health Department had received several reports of giardiasis. On December 13, a "boil water" order was issued. By the end of December several hundred cases of giardiasis had been reported. On December 23, 1985, the Ashley Reservoir was shut down, but there were sporadic reports of giardiasis as late as 1987. A new City water filtration system was placed in operation in January 1987. Although there was evidence that particles the size of the giardia lamblia pathogen would not be removed even by the new filtration system, there was no evidence which would support an inference that any post-1985 giardiasis reports were linked to problems with the City water system. Appellants filed their complaint in June 1988. Count I, labelled a "citizens' action" pursuant to the Safe Drinking Water Act ("SDWA"), 42 U.S.C. 300f, et seq., demanded equita- __ ___ ble relief and civil penalties. Count II alleged a "public nuisance" claim under federal common law and sought compensatory damages. Count III asserted a claim for damages pursuant to 42 U.S.C. 1983. Count IV pled a breach of warranty claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq. __ ___ ____________________ 2The giardia lamblia inhabits the intestinal tract of the beaver. 4 Other counts asserted pendent common law claims under Massachu- setts law. In October 1989, following several months of discovery, a magistrate judge ordered all further interrogatories and requests for production served by November 3, 1989, and responses and objections served by December 8. Except for five "unusually elaborate" discovery motions filed by appellants, the magistrate judge ruled on all motions by February 9, 1990, and leave was granted to amend the complaint. The magistrate judge set May 23 as the deadline for summary judgment motions, ordered "non-expert discovery" to proceed, and stated that expert discovery relating to issues surviving the summary judgment proceedings would be allowed to proceed after the summary judgment proceedings were concluded. Thereafter, the deadline for summary judgment motions was extended several times. On July 10, 1990, the magistrate judge ruled on appel- lants' five remaining motions to compel, fairly described as "well-meant but nightmarishly confusing and unhelpful." Most were denied without prejudice. At a status conference held on September 6, the magistrate judge extended the time for summary judgment until November 30 and stated that "plaintiffs may proceed with necessary discovery during the time set aside for briefing the motions for summary judgment." Plaintiffs were admonished about their obligations under Fed. R. Civ. P. 56(f) should they request further time to prepare their opposition to summary judgment. 5 Appellants were granted further time to respond to the motion for summary judgment, and oral argument was held in January 1991. Throughout the seven-month period between May 1990 (the original summary judgment motion deadline) and the January 1991 hearing, extensive non-expert discovery had proceeded. On January 7, 1991, the magistrate judge stayed all further discov- ery pending a ruling on the summary judgment motion. Expert discovery never took place. The magistrate judge filed a report and recommendation in July 1991, proposing that defendants be granted summary judgment on all federal claims. The district court approved the recommended decision in November 1991. See 28 ___ U.S.C. 636(b)(1). Appellants challenge the order entered July 16, 1991, denying their request for further discovery pursuant to Fed. R. Civ. P. 56(f), and the grant of summary judgment on their federal claims. II II DISCUSSION DISCUSSION __________ The summary judgment was predicated on the grounds that (1) all other forms of federal relief are preempted by the SDWA, (2) appellants did not comply with the SDWA notice requirements, and (3) their SDWA claims are not actionable absent an ongoing violation. Our review is de novo and we will conclude that __ ____ "[s]ummary judgment [was] warranted where the record, viewed in the light most favorable to the nonmoving party, reveals that 6 there is no genuine factual dispute and the moving party was entitled to judgment as a matter of law." Siegal, 921 F.2d at ______ 17. A. SDWA Preemption A. SDWA Preemption _______________ Appellants challenge the district court ruling that the SDWA preempts their section 1983 and common law nuisance claims. Relying on Middlesex County Sewerage Auth. v. National Sea _________________________________ _____________ Clammers Ass'n, 453 U.S. 1 (1981), the district court ruled that _______________ the enforcement scheme under the SDWA, like those under the environmental statutes at issue in Sea Clammers,3 is "suffi- _____________ ciently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under 1983," id. at 20, and ___ that the SDWA as a whole is sufficiently comprehensive to pre- clude federal common law remedies, id. at 22. Although their ___ arguments are far from clear, appellants appear to contend: first, that several of their claims stem from events not regulat- ed by the SDWA and thus that the SDWA does not preclude relief on their federal common law nuisance claims; second, that the SDWA is sufficiently unlike the statutes at issue in Sea Clammers to _____________ call into question the district court's reliance on Sea Clammers; ____________ and third, that the court erred in concluding that appellants' ____________________ 3At issue in Sea Clammers were the Federal Water Pollution _____________ Control Act ("FWPCA"), 33 U.S.C. 1251 et seq., and the Marine __ ___ Protection, Research and Sanctuaries Act("MPRSA"), 33 U.S.C. 1401 et seq. __ ___ 7 formulation of a section 1983 claim could not withstand SDWA preemption. 8 1. Federal Common Law 1. Federal Common Law __________________ The federal common law nuisance claims cannot escape preemption if the enactment of the SDWA "occupied the field [of public drinking water regulation] through the establishment of a comprehensive regulatory program supervised by an expert adminis- trative agency." Milwaukee v. Illinois, 451 U.S. 304, 317 _________ ________ (1981); see also Conner v. Aerovox, Inc., 730 F.2d 835, 837 (1st ___ ____ ______ _____________ Cir. 1984) (under same standard, FWPCA held to have preempted maritime claim), cert. denied, 470 U.S. 1050 (1985). When the ____ ______ question is whether federal statutory or federal common law standards should control the field, we "start with the assump- ______ tion" that Congress, not the courts, must decide. Id. at 317-18. ___ The establishment of a comprehensive regulatory program meeting the Milwaukee v. Illinois standard clearly indicates that Con- _________ ________ gress meant to reserve the governance of public drinking water standards to federal administrative regulation rather than to the "often vague and indeterminate nuisance concepts and maxims of equity jurisprudence." Milwaukee, 451 U.S. at 317. _________ We have little hesitation in concluding that Congress occupied the field of public drinking water regulation with its enactment of the SDWA. "The purpose of the [SDWA] is to assure that water supply systems serving the public meet minimum nation- _______ al standards for protection of public health." City of Evans- __ _________ ______________ ville, Inc. v. Kentucky Liquid Recycling, 604 F.2d 1008, 1016 ___________ __________________________ n.25 (7th Cir. 1979) (quoting H.R. Rep. No. 93-1185, reprinted in [1974] U.S. Code Cong. & Admin. News at 6454), cert. denied, 444 ____ ______ 9 U.S. 1025 (1980) (emphasis added). With minor exceptions, the SDWA applies "to each public water system in each State." 42 U.S.C. 300g. The SDWA enables the Administrator of the Envi- ronmental Protection Agency ("Administrator") to "publish maximum contaminant level goals and promulgate national primary drinking water regulations." Id. 300g-1(b)(1). The maximum contaminant ___ level is to "be set at the level at which no known or anticipated adverse effects on the health of persons occur and which allows an adequate margin of safety." Id. 300g-1(b)(4). The Adminis- ___ trator is authorized to list treatment techniques to achieve compliance with the maximum allowable contaminant levels and, in certain circumstances, to require particular treatment tech- niques. Id. 300g-1(b)(6)-(7). The federal regulations are to ___ be "amended whenever changes in technology, treatment techniques, and other means permit greater protection of the health of persons, but in any event such regulations shall be reviewed at least once every 3 years." Id. 300g-1(b)(9). Finally, al- ___ though the primary responsibility for enforcement remains with the States, the Administrator is empowered to enforce State compliance. Id. 300g-2-3. Thus, the regulatory scheme ___ established under the SDWA evinces a clear congressional inten- tion to entrust the regulation of public drinking water systems to an expert regulatory agency rather than the courts.4 ____________________ 4Nor are appellants aided by the savings clause in the SDWA. 42 U.S.C. 300j-8. The Supreme Court has ruled that the almost identical savings clause in the FWPCA, 33 U.S.C. 1365(a), does not preserve a federal common law remedy in light of the compre- hensiveness of the FWPCA as a whole. Milwaukee, 451 U.S. at 328- _________ 10 Appellants claim, however, that the SDWA is not suffi- ciently comprehensive to meet the test in Milwaukee v. Illinois, _________ ________ supra, particularly because the EPA did not regulate giardia _____ lamblia contamination at the time of the events which prompted the present litigation. Appellants misapprehend the nature of the comprehensiveness inquiry required under Milwaukee v. Illi- _________ _____ nois, which turns on "'whether the field has been occupied, not ____ whether it has been occupied in a particular manner.'" Conner, ______ 730 F.2d at 841 (quoting Milwaukee, 451 U.S. at 324). In other _________ words, "'once Congress has addressed a national concern, our fundamental commitment to the separation of powers precludes the courts from scrutinizing the sufficiency of the congressional solution.'" Id. (quoting People of State of Illinois v. Illinois ___ ___________________________ ________ Outboard Marine, 680 F.2d 473, 478 (7th Cir. 1982)). Provided ________________ the EPA has the statutory authority to regulate contaminants in the public drinking water supply, it is within the province of the agency, not the courts, to determine which contaminants will be regulated. The comprehensiveness of the legislative grant is not diminished, nor is the congressional intent to occupy the field rendered unclear, merely by reason of the regulatory agency's discretionary decision to exercise less than the total spectrum of regulatory power with which it was invested. See ___ Milwaukee, 451 U.S. at 324-25 n.18 (complaint that "permits _________ issued . . . under [the FWPCA] do not control overflows or treated discharges in a sufficiently stringent manner, not that ____________________ 29. 11 permits under the Act cannot deal with these subjects," does not create an interstice to be filled by federal common law).5 2. Section 1983 2. Section 1983 ____________ Appellants' section 1983 claims are based on two contentions. First, they contend that their rights under the SDWA were violated. Second, they assert a violation of their "constitutional right" to safe drinking water. We find merit in neither claim. Appellants may not pursue their section 1983 claims unless Congress intended to preserve a right of action under section 1983 to redress SDWA violations. "When the remedial devices provided in a particular Act are sufficiently comprehen- sive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under 1983." Sea Clammers, 453 ____________ U.S. at 20 (comprehensive enforcement schemes of FWPCA and MPSRA preclude 1983 action); see also Garcia v. Cecos Int'l, Inc., ___ ____ ______ _________________ 761 F.2d 76, 82-83 (1st Cir. 1985) (comprehensive enforcement scheme under Resource Conservation and Recovery Act ("RCRA") precludes right of action under 1983). Like the statutes at issue in Sea Clammers and Garcia, the SDWA establishes an elabo- ____________ ______ rate enforcement scheme which confers rights of action on both ____________________ 5Of course, insofar as appellants might complain about any failure of the EPA to assert its regulatory power under the SDWA, we would lack jurisdiction to entertain their complaint. See 42 ___ U.S.C. 300j-7(a)(1) (claims against EPA under the SDWA must be brought in the Court of Appeals for the District of Columbia Circuit); Western Nebraska Resources Council v. E.P.A., 793 F.2d ___________________________________ ______ 194, 199 (8th Cir. 1986). 12 the government and private citizens. The Administrator may bring a civil action to compel SDWA compliance, 42 U.S.C. 300g-3(b), and may issue compliance orders against violators of the SDWA regulations, id. 300g-3(g)(1). A civil penalty, amounting to ___ as much as $25,000 per day, may be claimed for violations of the SDWA regulations. See id. 300g-3(b), 300g-3(g)(3)(A). A ___ ___ State is invested with primary enforcement authority only after the Administrator determines that the State has adopted regula- tions at least as stringent as the federal regulations and that the State "has adopted and is implementing adequate procedures for the enforcement of such State regulations." Id. 300g- ___ 2(a)(2). Moreover, private actions may be brought in the United States Court of Appeals for the District of Columbia Circuit "pertaining to the establishment of national primary drinking water regulations (including maximum contaminant level goals)." Id. 300j-7. Finally, citizens may initiate enforcement pro- ___ ceedings against SDWA violators and against the Administrator for failure to perform any non-discretionary duty under the SDWA. Id. 300j-8. As the SDWA enforcement scheme is closely analo- ___ gous to other enforcement schemes found sufficiently comprehen- sive to evince a clear congressional intent to preempt relief under section 1983, we hold that appellants' section 1983 claims are preempted by the SDWA.6 Cf. Sea Clammers, 453 U.S. at 13-14 ___ ____________ ____________________ 6Nor does the SDWA savings clause, see 42 U.S.C. 300j-8, ___ avail appellants here. The Court has held that the almost identically worded FWPCA savings clause, see 33 U.S.C. 1365(a), ___ bars relief under 42 U.S.C. 1983. Sea Clammers, 453 U.S. at _____________ 14-16. 13 (identifying enforcement schemes under FWPCA and MPRSA); Garcia, ______ 761 F.2d at 83 (RCRA-enforcement provisions). Finally, even assuming a "fundamental constitutional right" to safe public drinking water, it would not alter the present analysis. Comprehensive federal statutory schemes, such as the SDWA, preclude rights of action under section 1983 for alleged deprivations of constitutional rights in the field occupied by the federal statutory scheme. See Smith v. Robinson, ___ _____ ________ 468 U.S. 992 (1984) (Education of the Handicapped Act provides exclusive remedy even where plaintiffs assert constitutional claims); Brown v. General Services Administration, 425 U.S. 820, _____ ________________________________ 824-25 (1976) ( 717 of the Civil Rights Act of 1964, as added by 11 of the Equal Employment Opportunity Act of 1972, provides exclusive remedy for challenging racial discrimination in federal employment even though alleged discrimination "clearly violated . . . the Constitution"); Zombro v. Baltimore City Police Dept., ______ ___________________________ 868 F.2d 1364 (4th Cir. 1989) (ADEA), cert. denied, 493 U.S. 850 ____ ______ (1989). B. The SDWA B. The SDWA ________ Having determined that appellants' only actionable federal claim arose under the SDWA, the district court granted summary judgment to all defendants-appellees except the City, on the ground that appellants had failed to abide by the SDWA's notice provision. We need not reach the SDWA notice issue, however, as we agree with the district court that appellants 14 failed to demonstrate a genuine issue of material fact as to whether there was an "ongoing" violation as required by the SDWA. The SDWA allows citizens' suits against persons "al- leged to be in violation of any requirements prescribed by or __ __ __ _________ under this subchapter . . ." 42 U.S.C. 300j-8(a)(1) (emphasis added). The Supreme Court has construed the identical language in the FWPCA, see 33 U.S.C. 1365(a), as not authorizing citi- ___ zens' suits absent a "continuous or intermittent violation." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., ____________________________ _______________________________ 484 U.S. 49, 64 (1987). "[T]he harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." Id. at 59.7 ___ Appellants do not disagree that Gwaltney governs. ________ Rather, as appellants see it, all Gwaltney requires is an allega- ________ _______ tion of "continuous or intermittent violation." As their com- ____ plaint included such an allegation, appellants claim the district court improperly extended Gwaltney by requiring appellants to ________ provide evidence of an ongoing violation in order to avoid summary judgment on their SDWA claims. As appellants character- ize it, the district court ruling caused their "initial jurisdic- tion to disappear." ____________________ 7As the Supreme Court noted, congressional use of the phrase "to be in violation" cannot be discounted as incidental. Gwalt- ______ ney, 484 U.S. at 57. The same phrase is found in other environ- ___ mental statutes. See Clean Air Act, 42 U.S.C. 7604; RCRA, 42 ___ U.S.C. 6972 (1982 ed. and Supp. III); Toxic Substances Control Act, 15 U.S.C. 2619 (1982 ed. and Supp. IV). 15 Appellants' characterization of the issue reflects a fundamental misunderstanding of summary judgment procedure. Upon a properly supported motion for summary judgment, the opposing party can avoid summary judgment only by presenting evidence sufficient to establish the existence of a genuine issue of material fact as to each element essential to its claim. Price _____ v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991) _____________________ ("nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of _____ _________ _______ its claim or defense is at least trialworthy") (emphasis in original).8 As plaintiffs-appellants produced no expert affida- vits, testimony, documentation or other evidence that could lead a rational trier of fact to find an "on-going" violation, a jurisdictional prerequisite to the maintenance of their SDWA claim, summary judgment was properly granted for all defendants. C. Restrictions on Discovery C. Restrictions on Discovery _________________________ Appellants claim that the district court prematurely curtailed discovery as of January 1991, which prejudiced their ability to authenticate documents needed to oppose summary judgment. As a consequence, the magistrate judge struck the unauthenticated documents for failure to meet the requirements of ____________________ 8The City contended that plaintiffs' allegation of an ongoing violation was a "sham." The City supported its conten- tion with an affidavit from the City engineer, attesting that "[t]o my knowledge, since 1986, there has [sic] been no document- __ ed water borne instances of giardiasis resulting from the City of Pittsfield's drinking water supply." (Emphasis in original.) 16 Fed. R. Civ. P. 56(3). See Fed. R. Civ. P. 56(e) ("When a motion ___ for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, __ __________ __ __ _________ ________ __ ____ ____ must set forth specific facts showing that there is a genuine issue for trial") (emphasis added).9 Appellants likewise object to the district court's refusal to permit expert discovery to begin until after the non-expert discovery had been concluded. The summary judgment motions were granted before expert discovery ever took place.10 Federal Rule 56(f) offers a "procedural 'escape hatch' for a party who genuinely requires additional time to marshal 'facts essential to justify [its] opposition' when confronted by a summary judgment motion." Paterson-Leitch Co. v. Massachusetts ___________________ _____________ Municipal Wholesale Electric Co., 840 F.2d 985, 988 (1st Cir. _________________________________ 1988) (quoting Hebert v. Wicklund, 744 F.2d 218, 221 (1st Cir. ______ ________ 1984)). Under Rule 56(f), "[t]he movant must (1) articulate a plausible basis for the belief that discoverable materials exist ____________________ 9Appellants raise no direct challenge to the order to strike. 10On February 9, 1990, the magistrate judge stated that expert discovery would take place only after the completion of non-expert discovery and to the extent that summary judgment had not already been granted to any of the defendants. On January 7, 1991, the same day on which he recommended the granting of summary judgment to all defendants, the magistrate judge stayed all further discovery. The plaintiffs' request for further discovery was denied by the magistrate judge on July 16, 1991, and affirmed by the district court on November 13, 1991, the day the court granted summary judgment to the defendants. 17 which would raise a trialworthy issue, and (2) 'demonstrate good cause for failure to have conducted the discovery earlier.'" Price, 931 F.2d at 164 (quoting Paterson-Leitch, 840 F.2d at _____ _______________ 988). Orders denying relief under Rule 56(f) are reviewed for abuse of discretion. Id. at 164; Bank One Texas, N.A. v. A.J. ___ _____________________ ____ Warehouse, Inc., 968 F.2d 94, 100 (1st Cir. 1992). _______________ The affidavit appellants presented in support of their motion for relief under Rule 56(f) did little more than list the witnesses appellants wished to depose, and allege "[t]hat because of the complexity of the case and the number of parties involved, the parties have not yet completed discovery." The affidavit presented no plausible basis for asserting a belief that "speci- fied" discoverable facts probably existed. See Paterson-Leitch, ___ _______________ 840 F.2d at 988 (Rule 56(f) affidavit "should articulate some plausible basis for the party's belief that specified 'dis- _________ coverable' material facts likely exist") (emphasis added). Nor did the affidavit demonstrate a realistic prospect that further discovery would disclose evidence sufficient to defeat the motion for summary judgment, which was granted largely on legal rather than factual grounds. Particularly, and most importantly, the Rule 56(f) affidavit merely conjectures that something might be discovered but provides no realistic basis for believing that further discovery would disclose evidence of an ongoing SDWA _______ ____ violation without which there could be no genuine issue of _________ material fact for trial. No document stricken by the district court under Rule 56(e) pertained to the existence of an ongoing 18 SDWA violation. Furthermore, appellants failed to identify any ________ specific fact they would expect to discover, even though they were forewarned by the magistrate judge that their reliance on Rule 56(f) relief would oblige them "to specify precisely what information they have reasonable grounds to expect would be disclosed that would generate genuine and material disputes of fact." Finally, appellants ascribe no "cause" for their failure to complete non-expert discovery, except for the complex- ity of the case. The case did indeed involve complex issues. Nevertheless, more than two and one-half years elapsed between the filing of the original complaint and the granting of the motion for summary judgment, and summary judgment was not granted until more than a year after appellants were made aware that summary judgment would be sought. We believe the district court allowed appellants ample time for adequate non-expert discov- ery;11 it did not abuse its discretion by declining Rule 56(f) relief from their own lack of diligence. See Price, 931 F.2d at ___ _____ 164 (no abuse of discretion in refusing Rule 56(f) relief from plaintiff's own "lack of diligence"). The district court judgment is affirmed. _______________________________________ ____________________ 11Although appellants assert that they were prejudiced by the lack of opportunity to conduct discovery relating to appel- lees' expert witnesses, the availability of the information needed to defeat summary judgment did not depend on appellants' ability to depose defendants' experts. Appellants were free to submit affidavits from their own experts as to the existence of an ongoing violation, see Fed. R. Civ. P. 56(e), yet none were ___ forthcoming. 19