**GOLNOY BARGE COMPANY, et al., Plaintiffs,**

v.

**M/T SHINOUSSA, et al., Defendants.**

**Civ. A. Nos. H–90–2414, 90–2476, 90–2488 and 91–180.**

United States District Court, S.D. Texas, Houston Division.

April 15, 1993.

784

Thomas Gibbs Gee, Baker & Botts, pro se.

Ronald L. White, Brown Sims Wise & White, Houston, TX, for Golnay Barge Co. and Apex RE & T Inc.

James Patrick Cooney, Royston Rayzor Vickery & Williams, Houston, TX, for M/T Shinoussa, Eletson Corp., Shinoussa Shipping Corp., and Liberia of Monrovia.

Dimitri P. Georgantas, Filteau Sullivan & Georgantas, Houston, TX, for M/T Hellespont Faith, Papachristidis Ship Management Services, Ltd., and Fidelis Shipping Corp.

Carl A. Parker, Port Arthur, TX, for Faith Brantley, Clifford W. Adams, Jose Reyes Almaraz, Marcelo Almaraz, Agustin Amaya, Claude S. Ard, Claude S. Ard Jr., Kenneth Auzton, An Van Bai, Richard H. Bailey, Rang Ngoc Bang, Jim Bates, Romeo Bilcic, Jack E. Bingle, Jack Blume, Jack Blume, Jr., Roy H. Bouse, Bobby R. Brannen, Tommy Brantley, Van Dang Bui and Hai Thanh Bur.

Alfred Roland Valdez, Berger & Valdez, Houston, TX, for Phouc Van Dang, Muoi Dam, Tuan Ngoc Dinh, Anh Tu Duong, Duoc Thanh Huynh, Ngan Van Huynh, Thien Xuan Mai, Den Van Nguyen, Jonh Nguyen, Ngoc Nguyen, Phuoc Van Nguyen, Rang Van Nguyen, Vui Van Nguyen, Thu Van Nguyen, Son Ngoc Thach, Pam Kim Ta, Lo Dinh Pham, Le Van Tran, Cathy Tran, Loi H. Thai, Tuc Van Vu, Tien Duc Vu, Lien Chi Trong, Long Chan Tran, Lien Kim Tran, and Thom Van Truong.

Larry D. Dowell, Dowell & Bromley, Houston, TX, for Son Thanh Nguyen, Hao Nhut Trinh, Long Thanh Nguyen, Hung Thanh Nguyen, Huy Dinh Luu, Mung Minh Le, Tich Van Ly, Hong Van Mai, and Miner La.

Randall Wiseman, pro se.

David A. Slaughter, Krist Gunn Weller Neumann & Morrison, Houston, TX, for Bobby Chambers, Anita A. Collins, John W. Collins, Daniel Curl and James B. Curl.

Joseph F. Ahern, Asst. U.S. Atty., U.S. Dept. of Justice, Washington, DC, for the U.S.

Lee D. Thibodeaux, Weller Wheelus & Green, Beaumont, TX, for Asa M. Duncan, Virginia D. Duncan, Lucille A. Granger, Mary K. Bowman, Kenneth J. Bartkowiak, Marilyn A. Bartkowiak, Mr. & Mrs. G.H. Galny, Durwood Whiddon, Rose M. Whiddon, Bruce Lewis, Pat Lewis, and Phillip Parliament.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Petitioners have filed a Joint Motion for Summary Judgment and Partial Summary Judgment, (Docket Entry No. 1090), seeking to dismiss those claimants who are non-licensed commercial fishermen, shrimpers, crabbers, or oystermen, and to dismiss some

of the claims asserted by claimants who are licensed but who have sued for losses arising from activities outside the scope of their licenses. For the reasons stated below, petitioners' Motion for Summary Judgment and Partial Summary Judgment is granted in part and deferred in part to allow further analysis of the preemption issue.

### 1. Non–Licensed Commercial Fishermen, Shrimpers, Crabbers, and Oystermen

Petitioners argue that those claimants who were not licensed under the laws of Texas to be commercial fishermen, shrimpers, crabbers, or oystermen on the day of the spill do not have standing to recover as commercial fishermen. Respondents argue that if a claimant was actually engaged in commercial fishing activity, it is irrelevant whether he was licensed by the state. Respondents allege that the only entities with a right to complain about the lack of a license are the state authorities, and that the lack of a license alone does not destroy a claimant's standing to bring this suit.

■ Both sides agree that the relevant authorities are the *Testbank* decisions and related cases. In *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), the Court established the general rule that a plaintiff cannot recover purely economic damages resulting from a negligent act without physical damage to a proprietary interest. The *Testbank* decision and related cases recognize an exception to this rule for commercial fishermen, who may recover purely economic harm resulting from negligent acts, such as an oil spill, that affects the fishing waters. *State of La. ex rel. Guste v. M/V Testbank,* 524 F.Supp. 1170, 1173 (E.D.La.1981); *Burgess v. M/V TAMANO,* 370 F.Supp. 247, 250 (S.D.Me.1973), *aff'd,* 559 F.2d 1200 (1st Cir.1977). The legal question before this court is whether the commercial fisherman exception applies to those who engaged in commercial fishing without the licenses required by the state. This court concludes that it should not.

■ The commercial fisherman exception to the rule against recovery for purely economic damages without physical injury to a proprietary interest is a narrow one. The district court in *Testbank* limited its holding to those fishermen who "were exercising their public right to make a *commercial use* of those waters." *Testbank,* 524 F.Supp. at 1174 (emphasis in original). *Testbank* rested on the "public right" to make one's livelihood from the sea. Similarly, in *Union Oil Co. v. Oppen,* 501 F.2d 558 (9th Cir.1974), the court noted that the fishermen entitled to recover were "lawfully and directly" engaged in fishing. *Oppen,* 501 F.2d at 570. The court in *Burgess v. M/V TAMANO, supra,* 370 F.Supp. at 250–51, justified the commercial fishermen exception by stating that damage to commercial fishermen from marine pollution interfered with the "direct exercise of a public right."

■ Those claimants who were not licensed by the state to fish the waters on a commercial basis were not exercising a "public right." To the contrary, without the necessary licenses, they simply had no right to fish. Texas Parks & Wildlife Code Ann. § 12.109(a)–(e) (Vernon 1991). Nonlicensed fishermen do not have a "public right" to fish "free from interference," the right protected by *Testbank.* The penalty under Texas law for catching aquatic life without the appropriate license is to have the catch seized by the arresting officer. All proceeds from the sale of the catch are the property of the State of Texas. Claimants ask the court to allow them to recover damages for economic benefits that they had no right to obtain in the first place. *See* Texas Parks & Wildlife Code Ann. § 12.109(a)–(e) (Vernon 1991).

Claimants argue that they are entitled to recover economic losses they suffered as commercial fishermen by marine pollution, because such losses were foreseeable whether or not the fishermen were licensed. They cite *Union Oil Co. v. Oppen,* 501 F.2d 558 (9th Cir.1974). It is, however, not foreseeable that fishermen would suffer damage by losing the proceeds of a catch to which they had no legal right.

Claimants seeking recovery as commercial fishermen, crabbers, oystermen, or shrimpers, who were not licensed under the laws of Texas, will be dismissed. Claimants who

were licensed as to certain fishing activities but who are also seeking to recover for economic losses to other activities for which they were not licensed do have standing to recover for harm to activities covered by their licenses. However, their claims for damages to commercial fishing activities outside the scope of their licenses will be dismissed.

Within thirty days from the date of this Order, the parties will submit to the court a proposed order identifying those claimants who lack commercial licenses and are dismissed. This proposed order will also identify those claimants as to whom a factual dispute exists concerning whether they were licensed. The proposed order will also identify those claimants who have commercial licenses that do not cover all the activities for which the claimants seek damages. The proposed order will identify those claims that are outside the scope of the licenses, and those claims as to which factual dispute remain as to whether they are covered by the licenses or not.

## 2. Economic Loss Beyond the Time Period the Bay Was Closed

Petitioners also assert that claimants should be limited as a matter of law to recovering damages sustained while the bay was closed after the spill. Petitioners ask the court to disallow the private parties' claims for damages for damages as a result of diminution of marine life in the bay after it was reopened. The claims at issue include claims by licensed bay shrimpers and public oystermen for whom the seasons were not active during the period the bay was closed.

Petitioners assert that the private party claimants are precluded from asserting damage claims for the diminution of sea life in the bay resulting from the spill after the bay was reopened. Petitioners argue that the Federal Water Pollution Control Act ("FWPCA"), also known as the "Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq. (1985), preempts such claims.

33 U.S.C. § 1321(f)(5) states that:

The President, or the authorized representative of any State, shall act on behalf of the public as trustee of the natural resources to recover for the costs of replac-ing or restoring such resources. Sums recovered shall be used to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government, or the State government.

43 C.F.R. § 11.15(d) states that "[t]here shall be no double recovery under this rule for damages or for assessment costs, that is, damages or assessment costs may only be recovered once." The regulations further instruct that the "diminution of use values during the period of time required to obtain restoration or replacement may also be included in the measure of damages." 43 C.F.R. § 11.84(g)(1).

The private claimants base their right to recovery on federal maritime and tort common law rights of action.

In *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court considered the issue of "whether all federal common-law nuisance actions concerning ocean pollution now are preempted by the legislative scheme contained in the FWPCA ... and, ... if not, whether a private citizen has standing to sue for damages under the federal common law of nuisance." 453 U.S. at 9, 101 S.Ct. at 2621. The Court concluded that "the federal common law claim of nuisance in the area of water pollution is entirely preempted by the ... comprehensive scope of the FWPCA." *Id.* at 21, 101 S.Ct. at 2627 (citing *Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (*Milwaukee* II). In *Milwaukee* II, 451 U.S. at 319, 101 S.Ct. at 1793, the Supreme Court concluded that the FWPCA "occupied the field" of water pollution and that "[t]he establishment of such a self-consciously comprehensive program by Congress ... strongly suggests that there is no room for courts to attempt to improve on that program with federal common law." This holding reversed an earlier decision which had held that the federal common law of nuisance was not preempted by the FWPCA. *Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (*Milwaukee* I). The Supreme Court in *Milwaukee* II looked to the

passage of the FWPCA amendments of 1972 in concluding that the FWPCA preempted federal common law claims based on nuisance. *Milwaukee* II, 451 U.S. at 319, 101 S.Ct. at 1793.

Claimants assert that they do not seek a double recovery preempted by federal law because they seek to recover for "the loss of a prospective economic advantage." Claimants cite *Union Oil Co., supra,* 501 F.2d at 560, to support the recovery of such damages, asserting that such damages are of a different nature than those allowed by the Clean Water Act for "the cost of replacing or restoring ... resources." 33 U.S.C. § 1251 *et seq. Union Oil* did not address the preemption issue and was decided before the Supreme Court's decision in *Sea Clammers.* The decisions since *Sea Clammers* have broadly applied the preemption analysis to both federal common law nuisance and maritime claims. In *Conner v. Aerovox, Inc.,* 730 F.2d 835 (1st Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985), the court held that "[a]n ordinary construction of the Supreme Court's pronouncement in *Sea Clammers* that 'the federal common law of nuisance in the area of water pollution is entirely preempted' would appear to encompass all federal *judge-made* law of nuisance whether maritime or general federal law.'" *Id.,* 730 F.2d at 842. In *In re Oswego Barge Corp.,* 664 F.2d 327 (2d Cir.1981), the court held that the FWPCA established a comprehensive remedial scheme for the cost of cleaning up an oil spill that preempted judge-made maritime tort law founded on principles of common law nuisance.

The court will allow claimants and petitioners to file memoranda of law analyzing the application of this line of cases to the claims at issue here. The memoranda are to be filed no later than May 5, 1993.